**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**


**JEFFERY RASHAD MIDDLETON,**

      **Plaintiff,**

**vs.**                          **Case No. 4:08cv452-RH/WCS**

**SCOTT G. MAY, et al.,**

      **Defendants.**

_____/


## THIRD REPORT AND RECOMMENDATION

On September 21, 2009, Defendants filed a motion for summary judgment.  Doc. 85.  On September 30, 2009, Plaintiff was advised of his obligation to respond to the motion and a lengthy period of discovery was provided so that he could submit an adequate response.  Doc. 88.[1]  In October, 2009, Plaintiff's motion to stay this case was denied, doc. 89, and the parties were again advised that Defendants' motion for summary judgment, doc. 85, would be taken under advisement on January 19, 2010.  Doc. 90.  In early November, 2009, Plaintiff filed his memorandum in opposition to the motion, doc. 91, a statement of disputed facts, doc. 92, and a response, doc. 93.

---

[1]  The initial scheduling order was entered on May 4, 2009.  Doc. 35.

Thereafter, Plaintiff filed numerous motions, docs. 94-96, 98, 102-103, and several notices, docs. 100, 104.  Most recently, United States District Judge Robert Hinkle denied Plaintiff's motion for reconsideration.  Docs. 102, 106.

In an order entered on December 15, 2009, Plaintiff was advised that the January 19, 2010, deadline would remain and he should file an amended response, if he believed it was necessary, by that deadline.  Doc. 99.  At this point, discovery has ended and the Defendants' motion for summary judgment, doc. 85, is ready for a ruling.  Nothing further was received from Plaintiff and, therefore, the motion for summary judgment, doc. 85, will be adjudicated with consideration of Plaintiff's initial responses in opposition, docs. 91-93.[2]

Plaintiff's second amended complaint was filed on April 1, 2009.  Doc. 28.  *See also* doc. 31.  That is the active version of the complaint.

**Legal standards governing a motion for summary judgment**

On a motion for summary judgment Defendants initially have the burden to demonstrate an absence of evidence to support the nonmoving party's case.  Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986).  If they do so, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of material fact for trial.  *Id.*  An issue of fact is "material" if it could affect the outcome of the case.  Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted).  Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material

---

[2]  The claims against Defendants Bockelman and Millender were dismissed for failure to exhaust administrative remedies.  Docs. 52, 63, 79, and 87.

facts, <u>Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation</u>, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient.  The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Hickson Corp.</u>, 357 F.3d at 1260, *quoting* <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986).  All reasonable inferences must be resolved in the light most favorable to the nonmoving party, <u>Watkins v. Ford Motor Co.</u>, 190 F.3d 1213, 1216 (11th Cir. 1999), if there is a genuine dispute as to those facts.  <u>Scott v. Harris</u>, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007), *cited in* <u>Ricci v. DeStefano</u>, — U.S. —, 129 S.Ct. 2658, 2677, 2009 WL 1835138, 18 (June 29, 2009).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." <u>Matsushita Elec. Industrial Co.</u>, 475 U.S. at 587 (internal quotation marks omitted), *quoted in* <u>Ricci v. DeStefano</u>, 129 S.Ct. at 2677, 2009 WL 1835138, 18 (June 29, 2009).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " <u>Owen v. Wille</u>, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* <u>Celotex</u>, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of

evidentiary materials listed in Rule 56(c).  <u>Owen v. Wille</u>, 117 F.3d at 1236; <u>Celotex</u>, 477 U.S. at 324, 106 S. Ct. at 2553.

Local Rule 56.1(A) provides that a motion for summary judgment "shall be accompanied by a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried.  Failure to submit such a statement constitutes grounds for denial of the motion."  The Local Rule also provides that the statement "shall reference the appropriate deposition, affidavit, interrogatory, admission, or other source of the relied upon material fact, by page, paragraph, number, or other detail sufficient to permit the court to readily locate and check the source."  The Local Rule provides that the party opposing the motion shall serve a similar statement of material facts as to which the party contends there is a genuine issue to be tried, using the same format.  Facts set forth in Defendants' statement will be deemed admitted (if supported by the record evidence) unless controverted by Plaintiff's statement.

**The relevant Rule 56(e) evidence**

**Defendants' evidence**

The summary judgment motion, filed by Defendant Mays, Hobbs, Harrell, Roulhac, reveals that at the time of the events in question, Plaintiff was incarcerated at Franklin Correctional Institution, where all four of the Defendants were employed.  Doc. 85.  On August 2, 2008, Plaintiff was housed in disciplinary confinement and prison officials were conducting searches of inmate cells.  Doc. 85-2 (Ex. B).[3]  When

---

[3] Hereafter, all references to Defendants' exhibits are to those attached to document 85, and Plaintiff's exhibits are attached to document 93.  References are to the document and page in the electronic docket, followed by a reference (in

Defendant Hobbs approached Plaintiff's cell, Plaintiff began taunting the Defendant with a stream of obscenities. Doc. 85-10 (Ex. J). Pursuant to standard procedures, confinement inmates are moved to another cell while his cell is being searched. Doc. 85-4 (Ex. D).[4] Plaintiff was removed from his cell and placed into a shower cell so officers could search Plaintiff's cell. Doc. 85-4 (Ex. D).

Plaintiff became disruptive while in the shower cell, "yelling obscenities at staff" and trying "to get other confinement inmates to join in." Doc. 85-4 (Ex. D); Doc. 85-5 (Ex. E). Defendant Hobbs urged Plaintiff to cease his disruptive behavior, but Plaintiff refused. *Id.* Plaintiff also had "stepped through" his handcuffs[5] so that the handcuffs were in the front of his body instead of behind his back. *Id.*

The shift supervisor, Defendant May, was advised by Defendant Hobbs that Plaintiff "was in a shower cell [and] was creating a disturbance by yelling on the wing, attempting to get other inmates involved." Doc. 85-3 (Ex. C). Defendant Hobbs also reported that Plaintiff had refused to allow his hand-restraints to be removed and "had stepped through the hand restraints placing his hands in front of him." *Id.* Defendant Hobbs reported that he had counseled with Plaintiff several times but Plaintiff refused to stop his actions. *Id.* Defendant May came to speak to Plaintiff about his behavior and ordered him to stop "his disruptive behavior and to allow the hand restraints to be

_____

parenthesis) to the corresponding paper copy and page number. Both citations are referenced as *pro se* litigants do not have access to the court's electronic docket.

[4] Defendant Harrell also states in his affidavit that it is "standard practice to remove a confinement inmate to another cell while his cell is being searched." Doc. 85-5 (Ex. E).

[5] Plaintiff remained in hand restraints in the shower call because he "had refused to allow [officers] to remove his restraints." Doc. 85-4 (Ex. D).

removed." *Id.* Plaintiff refused to comply and continued his behavior. *Id.* Plaintiff also

"refused [Defendant] May's order to allow his hand restraints to be removed." Doc. 85-5

(Ex. E). Security concerns are heightened when an "inmate has manipulated his hand

restraints to the front of his person . . . in that he can now effectively punch, grab and

strike with his hands." Doc. 85-7 (Ex. G).

Authorization for the use of chemical agents was given to Defendant May from

medical staff, who said that there was "no medical condition that would be exacerbated

by the use of chemical agents." *Id.* Videotaping procedures began and Defendant May

gave Plaintiff a "final order to cease his disruptive behavior" and told Plaintiff that if he

failed to do so, chemical agents would be used against him. Doc. 85-4 (Ex. D).

Defendant May also told Plaintiff that the "warning would not be repeated if [Plaintiff]

became disruptive" again. Doc. 85-4 (Ex. D); Doc. 85-5 (Ex. E). At that point, Plaintiff

complied with the order and the camera was turned off. Doc. 85-4 (Ex. D). However,

Plaintiff's compliance was short lived. Doc. 85-4 (Ex. D). Once the video camera was

turned off, Plaintiff resumed his yelling and cursing at staff. *Id.* Defendant Hobbs tried

again to counsel with Plaintiff and stop his behavior, but he "refused to do so." *Id.*

When Defendant May observed Plaintiff yelling and cursing at staff a short time

later, he administered chemical agents on Plaintiff, using three one-second "bursts of

MK9 Sabre Red OC Pepper Spray to the chest area of [Plaintiff.]" Doc. 85-3 (Ex. C).

Plaintiff "continued to yell and curse at staff" and so Defendant May administered three

more one-second bursts of pepper spray. *Id.* At that point, Plaintiff stopped his

disorderly behavior and he was removed by Defendants Hobbs and May to a

"decontamination shower," where he showered and was provided clean clothing. Doc.

85-4 (Ex. D).  Plaintiff was then escorted to the medical room where he was examined by a nurse.  *Id.*

Plaintiff's refusal to stop his disruptive behavior was the "only reason chemical agents were" used upon Plaintiff, not because any officer was upset that Plaintiff was questioning the cell search.  *Id.*  "It was necessary to bring an end to [Plaintiff's] disruptive actions."  Doc. 85-3 (Ex. C).  "His yelling and cursing at staff and attempting to get other confinement inmates to join in created a security issue on the unit."  *Id.*  The chemical agents were not used because of Plaintiff's filing of grievances or for any other reason beyond Plaintiff's disruptive behavior.  *Id.*

Plaintiff complained to the nurse that his eyes were burning, but voiced no other complaints.  Doc. 85-9 (Ex. I).  The medical records indicate that Plaintiff's skin was intact, with no bruising or swelling, and his breathing was not labored.  *Id.*  The nurse advised him to wash his face with cool water to relieve his symptoms.  *Id.*

Plaintiff was charged in three disciplinary reports based upon the events of the day.  Doc. 85-10 - Doc. 85-12 (Exhibits J-L).  One was for disrespect for officials, one was for participating in a disturbance, and the remaining charge was for spoken threats. *Id.*  Plaintiff was present at the disciplinary hearing initially, but he eventually chose not to continue to participate and, thus, was returned to his cell.  *Id.*  Plaintiff was found guilty of all three disciplinary reports.  *Id.*

An Inspector General's investigation was conducted on August 13, 2008, concerning Plaintiff's allegations of excessive force.  Doc. 85-6 (Ex. F).  Dean Glisson with the Office of the Inspector General's Use of Force Unit was assigned to review the incident.  *Id.*  The investigation did not substantiate Plaintiff's claims of excessive or

abusive force, and the use of chemical agents was deemed "an appropriate response to [Plaintiff's] document disruptive behavior." *Id.*

### Plaintiff's evidence

Plaintiff's statement of disputed material facts, filed as document 92, does not actually present facts, but argument. Plaintiff did, however, present a statement of facts as part of his memorandum of law, doc. 91, pp. 10-11, and another "statement of the case" as part of his Brief in Opposition to Defendants' Summary Judgment Motion," doc. 93-3, pp. 11-3.

Plaintiff's statement as incorporated in doc. 93-3 is signed under penalty of perjury, although each material statement of fact is an equivocating statement beginning with "Upon information and belief . . . ." Such a statement is not sufficient as evidence and is inadmissible in its present form. A declaration expressing that statements are "true and correct to the best of my knowledge and belief" carries with it the plain implication that the affiant does not know whether the statements are true or not, and does not wish to be held accountable if they are not.[6] While admittedly the phrase "best of my knowledge and belief" or "information and belief" is a part of common speech, it equivocates and, therefore, does not meet the requirements of Rule 56(e) that an affidavit "be made on personal knowledge" and "show affirmatively that the affiant is competent to testify to the matters stated therein." Rule 56(e)'s personal knowledge requirements prevents such statement "from raising genuine issues of fact sufficient to

---

[6] It is recognized that all of Defendants' affidavits suffer from this same defect. However, under the <u>Celotex</u> standard, Defendants are not required to come forward with any evidence in motioning for summary judgment. 477 U.S. at 325, 106 S. Ct. at 2554; *see also* Fed. R. Civ. Proc. 56(a).

defeat summary judgment." Pace v. Capobiano, 283 F.3d 1275, 1278-79 (11th Cir. 2002). Accordingly, Plaintiff's statement of facts and declaration cannot be considered in response to Defendants' summary judgment motion.

Nevertheless, Plaintiff also submitted a "declaration" in opposition to the motion for summary judgment which has been considered as Rule 56 evidence. That document is filed electronically as doc. 93-8, pp. 1-3 (Plaintiff's Ex. O), is signed under penalty of perjury pursuant to 28 U.S.C. § 1746, and meets the requirements of a personal affidavit under Rule 56(e). The only declaration in this of any relevance is the following:

> I did not resist or threaten the officers in any fashion or break any prison rules, rather, I do admit to changing the position of the restraints to the front of me to protect my fact from the defendant May, potentially spraying me directly in my face with mace in which I admit that he did succeed at.

Doc, 93-8, p. 3.

In addition, Plaintiff submitted the written depositions of several inmates. Those sworn statements suffer from the same defect noted above: they are presented as "true and correct to the best of [the affiant's] knowledge, information and belief." Doc. 93-8, pp. 21, 27, 34, and 41. Inmate Gale no knowledge of the incident. Doc. 93-8, p. 21. Two inmates said that Plaintiff did not create any "disturbance" while in the shower cell. *Id.*, pp. 24, 40. Another inmate said Plaintiff was not trying to create a riot. *Id.*, p. 33.

Notwithstanding these defects, the court has an obligation to allow the parties to remedy obvious defects in summary judgment materials, although the court is not required or permitted to become counsel to a litigant, even one who proceeds *pro se*. Griffith v. Wainwright, 772 F.2d 822, 825, n. 6 (11th Cir. 1985), *citing* Barker v. Norman,

651 F.2d 1107, 1128-29 & n. 26 (5th Cir. Unit A 1981). I will proceed to consider Plaintiff's filings as if they had been correctly filed.

Plaintiff's evidence is that on August 2, 2008, cell searches were being conducted because another inmate had been caught passing contraband from cell to cell. Doc. 91, p. 10. Defendants Hobbs, Harrell, and Roulac were conducting the search in Plaintiff's housing area. *Id.* When Plaintiff questioned why his cell was being searched (since other inmates who had been caught with contraband), Defendants became "upset or offended" and ordered both Plaintiff and his cellmate out of their cell. *Id.* Defendant Hobbs and Harrell packed Plaintiff's property and escorted Plaintiff to a shower cell. *Id.*

Once Plaintiff was in the shower cell, Defendant Hobbs radioed Defendant May and reported that Plaintiff was being disruptive. Doc. 91, p. 11. Ten minutes later, Defendant Hobbs walked up to Plaintiff's cell and told Plaintiff he did not want to hear anything Plaintiff had to say and said he was "gonna get it." *Id.* The Defendant also told Plaintiff that the grievances Plaintiff had written on him previously "didn't work" as he was still there. *Id.*

Approximately an hour and a half later on August 2, 2008, Defendant May approached Plaintiff's cell and sprayed Plaintiff with chemical agents "directly in his face, with no hesitation," at point blank range with three, one-second bursts of chemical agents. Doc. 91, p. 11*; see also* doc. 93-8, p. 2 (Plaintiff's Ex. O). Defendant then sprayed Plaintiff twice more "in the back of his head with mace." *Id.* Plaintiff states this was all done while Plaintiff was locked in the shower cell with hand restraints on. *Id.*, at 11. Plaintiff also states that "Defendant Hobbs, Harrell, and Roulhac sat an watched the

attack but failed to intervene in controling [sic] May [sic] unprofessional use of force actions."  Doc. 93-8, p. 2 (Plaintiff's Ex. O).

Plaintiff states also that prior to the use of force, he was "subjected to [an] illegal search and seizure of [his] personal property" when Defendants packed up Plaintiff's property.  Doc. 93-8, p. 2 (Plaintiff's Ex. O).

Plaintiff avers that after he was sprayed with the chemical agents, he was given a shower and examined by the nurse.  Doc. 93-8, p. 2 (Plaintiff's Ex. O).  Plaintiff acknowledges that he stepped through his hand restraints and had them in front of his body before the use of chemical agents.  *Id.*, at 2-3.  Finally Plaintiff states that "during these events [he] did not resist or threaten the officers in any fashion or break any prison rules . . . ."  *Id.*, at 3.

**Legal analysis**

A claim that excessive and unnecessary force was used by correctional officers is founded upon the Eighth Amendment and requires a showing of "unnecessary and wanton infliction of pain."  Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986).  Relevant to the inquiry will be "the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of injury inflicted."  *Id.* at 320; *see e.g.*, Williams v. Burton, 943 F.2d 1572, 1575 (11th Cir. 1991); Ruble v. King, 911 F.Supp. 1544, 1554 (N.D. Ga. 1995).  In evaluating such a claim, courts "must balance the 'prisoner's Eighth Amendment rights with the competing institutional concerns for the safety of prison staff and inmates.'"  Ruble, 911 F.Supp. at 1554, *quoting* Williams, 943 F.2d at 1575.

While the absence of serious injury is relevant to an excessive force claim, that does not end the inquiry. Baldwin v. Stalder, 137 F.3d 836, 839 (5th Cir. 1998), *citing* Hudson v. McMillian, 503 U.S. 1, 7, 112 S. Ct. 995, 999, 117 L. Ed. 2d 156 (1992). In Hudson v. McMillian, the Court stated that "the Eighth Amendment's prohibition of cruel and unusual punishment excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.' " Siglar v. Hightower, 112 F.3d 191, 193-94 (5th Cir. 1997), *quoting* Hudson, 503 U.S. at 10, 112 S. Ct. at 1000 (considering the "physical injury" requirement of the PLRA). "[T]he injury must be more than *de minimus*, but need not be significant." Siglar, 112 F.3d at 193. As noted by the Supreme Court, "[t]he absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." 503 U.S. at 7, 112 S. Ct. at 999; *see also* Harris v. Chapman, 97 F.3d 499, 505 (11th Cir. 1996), *cert. denied* 520 U.S. 1257 (1997). If prison officials did not use force "in a good-faith effort to maintain or restore discipline," but did so "maliciously and sadistically to cause harm" *see* Hudson, 503 U.S. at 7, 112 S.Ct. at 999, an inmate presents a viable claim.

Plaintiff's evidence gives a general description of the events leading up to the use of chemical agents upon him, and he admits that he stepped through the handcuffs, but neither Plaintiff nor his inmate witnesses provide sworn evidence with respect to the critical question, whether Plaintiff was yelling obscenities at the correctional officers, encouraging other prisoners to join in, and refused to stop when ordered to stop. Plaintiff does not explicitly deny this. The inmate witnesses express an opinion that

Plaintiff was not being disruptive, or not encouraging a riot, but these are opinions. They do not testify as to what they saw and heard.

In summary, therefore, Defendants' evidence is undisputed. Plaintiff was yelling and cursing while in the shower cell, yelled to encourage other prisoners in confinement to join in, refused to cease his behavior, and had stepped through his handcuffs. Confinement is, *ipso facto*, a closely confined space. It houses those prisoners who have violated prison rules and cannot be safely housed with other prisoners in the general population. Confinement is a place where disturbances must be quelled immediately. Plaintiff's continuous yelling of obscenities at the officers created a dangerous situation. The officers had two choices to stop Plaintiff's disruption. They could either enter the cell and use physical force, or they could use chemical agents. Plaintiff had stepped through his handcuffs, and entering the cell might have resulted in injury to a correctional officer. Under these circumstances, there is no genuine dispute of material fact that using a chemical agent to encourage Plaintiff to stop his misbehavior was reasonable. Defendants are entitled to summary judgment as to the excessive force claim.

Plaintiff has attempted to raise a second claim in the summary judgment process, complaining that Defendants unlawfully searched and seized his property in violation of the Fourth and Fourteenth Amendments. *See* doc. 91, p. 6. That claim is frivolous. It is well established that prisoners have no reasonable expectation of privacy in their prison cells such that they are entitled to the protection of the Fourth Amendment against unreasonable searches and seizures. Hudson v. Palmer, 468 U.S. 517, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984)(holding that). The fact of arrest and incarceration

abates all legitimate Fourth Amendment privacy and possessory interests.  *See*

Hudson, 468 U.S. at 537-540, 104 S. Ct. at 3206-3207 (O'Connor, J., concurring).

Any latent First Amendment claim is equally frivolous.  *See* doc. 91, p. 19.  While

prisoners retain First Amendment rights, including for example, the First Amendment

right of free exercise of religion, *see* Cruz v. Beto, 405 U.S. 319, 92 S.Ct. 1079, 31

L.Ed.2d 263 (1972) (*per curiam*), prisoners do not have a protected right to any "free

speech" they wish to utter.  Prison regulations or policies "alleged to infringe

constitutional rights are judged under a 'reasonableness' test less restrictive than that

ordinarily applied to alleged infringements of fundamental constitutional rights."  O'Lone

v. Estate of Shabazz, 482 U.S. 340, 349, 107 S. Ct. 2400, 2404, 96 L. Ed. 2d 282

(1987) (holding that the Turner v. Safley standard of review is applicable to claims that

an inmate's free exercise rights have been violated).  O'Lone continued the Court's

admonition to give respect and deference to the judgment of prison administrators even

in First Amendment challenges raised within the confines of prisons or jails.  482 U.S. at

350, 107 S.Ct. at 2405.

Thus, an inmate does not have a valid First Amendment right to yell or curse at

prison officials.  Maintaining the security and order of a prison requires that prisoners

give due respect to the authority of prison officers.  Plaintiff failed to comply with that

authority and his rights were not violated by a use of force made necessary to bring

about compliance.  Moreover, the evidence reveals that it is policy to move an inmate

out of his cell while the cell is being searched.  Plaintiff did not present any evidence to

dispute that finding, and there is no evidence that Plaintiff was moved or sprayed with

chemical agents for questioning prison officials. Judgment should be entered in favor of Defendants.

Plaintiff's due process claims against Defendants Millender and Bockelman concerning the disciplinary hearing were previously dismissed. Docs. 79, 87.

**Conclusion**

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' motion for summary judgment, doc. 85, be **GRANTED** and judgment be **ENTERED** in favor of Defendants on all of Plaintiff's claims.

**IN CHAMBERS** at Tallahassee, Florida, on February 9, 2010.


<u>s/    William C. Sherrill, Jr.</u>
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


**<u>NOTICE TO THE PARTIES</u>**

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**